# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF | CASE NO. 09-11743 |
| PHOENIX ASSOCIATES<br>LAND SYNDICATE, INC., | CHAPTER 7 |
| | SECTION B |
| DEBTOR | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WILBUR J. "BILL" BABIN, JR., IN HIS<br>CAPACITY AS TRUSTEE OF THE<br>BANKRUPTCY ESTATE OF PHOENIX<br>ASSOCIATES LAND SYNDICATE, | Adversarial Proceeding |
| PLAINTIFF | No. 10-1020 |
| VERSUS | |
| E.H. MITCHELL & COMPANY, L.L.C., | |
| DEFENDANT | |

## MEMORANDUM OPINION

Phoenix Associates Land Syndicate, Inc. (the "debtor") filed a petition under Chapter 11 of the Bankruptcy Code on June 10, 2009, and the case was converted to Chapter 7 on July 31, 2009. On February 23, 2010, Wilbur J. Babin, Jr. (the "trustee") filed a complaint against E.H. Mitchell & Company, L.L.C. ("Mitchell"), a judgment creditor, seeking to avoid the recordation of a monetary judgment and to avoid a transfer of an appeal bond originally posted in state court by the debtor. The matter came before the court on a trial of the trustee's complaint on September 23, 2010. For the reasons set forth below, the court finds that the trustee can avoid the recordation of the judgment, but the trustee cannot avoid the transfer of the appeal bond.

1

I. **<u>Avoidance of Recordation of Monetary Judgment</u>**

Mitchell, as the defendant / plaintiff in reconvention in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana ("state court"), was awarded a judgment in the sum of $3,563,585.00 against the debtor on March 18, 2009.[1] This judgment was recorded in the mortgage records of St. Tammany Parish on April 3, 2009.[2] Therefore, both the rendition and recordation of the monetary judgment occurred within ninety days before the date of filing of the debtor's Chapter 11 petition.

Section 547(b) of the Bankruptcy Code permits a bankruptcy trustee to avoid a debtor's preferential transfers to creditors. A transfer may be avoided if it (1) benefits the creditor; (2) is made in payment of a debt that is antecedent to the transfer; (3) is made while the debtor is insolvent; (4) is made within ninety days before the filing of the bankruptcy petition; and (5) enables the creditor to receive more than such creditor would receive had the transfer not been made.

There is no dispute that Mitchell's judgment was obtained for the benefit of Mitchell, and the judgment was obtained for or on account of an antecedent debt owed by the debtor before such judgment was rendered. Therefore, the court will only examine the last three elements of section 547(b).

A.

As a preliminary matter, the court needs to determine whether Mitchell's judicial lien constitutes a transfer under this section. There are two sub-issues. The first sub-issue the court decides is whether a judicial lien falls within the definition of "transfer." The comprehensive definition of "transfer" includes "each mode, direct or indirect, absolute or conditional, voluntary

---

[1] Ex. 10.

[2] *Id*.

or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."[3] The definition is "as broad as possible."[4] The plain meaning of property or interest in property includes a judicial lien. The Bankruptcy Code codifies the long-established principle that "courts will refuse to sanction acts done by indirection that if performed directly would be barred by law."[5] The United States Court of Appeals for the Fifth Circuit has held that a judicial lien is "avoidable as a preferential 'transfer' provided § 547(b)'s other requirements are satisfied."[6]

The second sub-issue the court will decide is whether a judicial lien qualifies for one of the exceptions under section 547(c). The most relevant exception would be the valid statutory lien exception in section 547(c)(6), providing that the trustee may not avoid a transfer "that is the fixing of a statutory lien that is not avoidable under section 545 of this title."[7] Nevertheless, section 101 of the Code defines "statutory lien" as "lien arising solely by force of a statute… but does not include [a] security interest or [a] judicial lien."[8] The plain meaning of section 101 has excluded judicial liens from the protection of this exception.

B.

Next, the court inquires as to whether the judgment was rendered and recorded while the debtor was insolvent. Section 547(f) specifically provides that, for purposes of avoiding a preferential transfer, "the debtor is presumed to have been insolvent on and during the 90 days

---

[3] 11 U.S.C. §101(54).

[4] 5 ALAN RESNICK AND HENRY SOMMER, COLLIER ON BANKRUPTCY § 547.03[1][a], at 547-16 (16th ed. 2010).

[5] *Id*.

[6] *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1415 (5th Cir. 1997). *See also In re Underwood*, 24 B.R. 503, 505 (Bankr.N.D.Miss. 1982).

[7] 11 U.S.C. § 547(c)(6) (2010).

[8] 11 U.S.C. § 101 (53) (2010).

immediately preceding the date of the filing of the petition."[9] The presumption is designed to simplify the trustee's burden to establish a preference and to reduce unnecessary litigation.[10] Because the transfer occurred within the 90 days preceding the date of the filing of the petition as the court will analyze in Part C, the section 547(f) presumption applies. Mitchell contends that the trustee did not have personal knowledge as to whether the estate was insolvent at the time of rendition and recordation of the judgment.[11] The court is not persuaded by Mitchell's argument because Mitchell failed to come up with "evidence to rebut the presumption" and the trustee was entitled to rely upon the presumption of insolvency in his favor.[12] Therefore, the third element of section 547(b) is satisfied.

C.

Next, the court inquires as to whether the transfer fell within the preference period. To make this determination, the court looks to the applicable state law to determine when the alleged transfer occurred in this transaction.[13] In Louisiana, a "judicial mortgage is created by filing a judgment with the recorder of mortgage."[14] A Louisiana state court has determined that a judicial mortgage takes effect only from the date or recordation.[15] The transfer occurred on the

---

[9] "[W]hen a chapter 11 case is converted to a chapter 7 case, the preference period will be measured from the date of the filing of the chapter 11 petition." 5 ALAN RESNICK AND HENRY SOMMER, COLLIER ON BANKRUPTCY § 547.03[6], at 547-38. (16th ed. 2010). So the date of filing is June 10, 2009, the original petition date.

[10] *In re Emerald Oil Co.*, 695 F.2d 833, 838 (5th Cir. 1983).

[11] (P-21), Trial Transcripts, at 62-90.

[12] *In re Emerald Oil Co.*, 695 F.2d at 838.

[13] 11 U.S.C. § 547(e)(1)(A) (2010).

[14] LSA-C.C. Art. 3300.

[15] *City Sav. Bank & Trust Co. v. Johnson*, 286 So. 2d 131, 133 (La.App. 3 Cir. 1973).

date of recordation, namely April 3, 2009, which is well within the 90 days preceding the date of the filing of the petition. Therefore, the fourth element of section 547(b) is satisfied.

D.

Finally, the court needs to determine whether the transfer enabled the creditor to receive more than he would have received had the transfer not been made. The inquiry turns on "the status of the creditor to whom the transfer was made."[16] "With respect to unsecured creditors, '[a]s long as the distribution in bankruptcy is less than one-hundred percent, any payment on account to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.'"[17] "[A]s a matter of law, whenever a general unsecured creditor obtains, within the preference period, a judicial lien against a debtor who cannot fully repay his unsecured creditors, he has received a preference."[18] Although distributions have not yet been made in the debtor's Chapter 7 case, the court can say with confidence that there will not be a 100% distribution to unsecured creditors in this case.[19] Because Mitchell was an unsecured creditor, he would receive a *pro rata* share of the assets available to the creditors of his class under a Chapter 7 liquidation had the judicial mortgage not been recorded. By recording the monetary judgment in the state court, Mitchell

---

[16] *In re Pysz*, 2008 WL 2001753 (Bankr. D.N.H. 2008).

[17] *Id*.

[18] *Id*.; *In re Orth-O-Vision, Inc.*, 49 B.R. 943, 945 (Bankr. E.D.N.Y. 1985); *see Deel Rent-A-Car, Inc. v. Levine*, 16 B.R. 873, 874 (S.D. Fla. 1982).

[19] The trustee's testimony as to the insolvency of the estate was based on his review of the bankruptcy schedules and the proofs of claims, as well as his knowledge of the estate's assets. (P-21), Trial Transcripts, at 63-72. Mitchell never offered any evidence to rebut this testimony despite his allegation that the trustee lacked personal knowledge to make this determination. Accordingly, the court finds the estate will not be able to provide a 100% distribution to unsecured creditors in a Chapter 7 liquidation.

5

became a secured creditor, receiving more than the *pro rata* share it would otherwise receive. The fifth element of section 547(b) is satisfied.

For the foregoing reasons, Mitchell's recordation of its judgment was a preferential transfer that is avoided under section 547(b).

## II. Avoidance of the Appeal Bond

During the course of the litigation in the state court, Mitchell obtained a declaratory judgment in which the court held that the subject lease had been terminated because of a breach by the debtor.[20] This declaratory judgment provided no monetary relief.[21] The debtor filed its petition for an appeal of the declaratory judgment, requesting a suspensive appeal.[22] On October 10, 2006, the 22nd Judicial District Court granted the debtor a suspensive appeal from the declaratory judgment, upon the debtor furnishing a bond in the amount of $100,000.00, pursuant to the provisions of Louisiana Code of Civil Procedure Article 2124.[23] On October 19, 2006, the debtor filed its appeal bond in that amount, in the form of a cashier's check issued by Central Progressive Bank, payable to the Clerk of Court, 22nd Judicial District Court.[24] On September 14, 2007, the Court of Appeal of Louisiana, First Circuit, affirmed the declaratory judgment.[25] On June 3, 2009, Mitchell filed an ex parte motion for an order directing the clerk to pay the

---

[20] Ex. 3.

[21] *See id.*

[22] Ex. 4.

[23] Ex. 5.

[24] Ex. 8.

[25] Ex. 9.

$100,000.00 appeal bond to Mitchell.[26] On the same day, the state court judge signed the order and the clerk issued a check payable to Mitchell in that amount.[27]

It is disputed as to when the transfer of the appeal bond occurred. The trustee alleges that the transfer occurred when the state court issued a check payable to Mitchell on June 3, 2009, only a few days before the Chapter 11 was filed on June 10, 2009.[28] If so, the transfer was avoidable as a preference if the other elements of section 547(b) are satisfied. In contrast, Mitchell contends that the transfer occurred when the debtor posted the bond on October 19, 2006.[29] If so, the transfer occurred outside any possible preference period and it cannot be avoided under section 547(b).

When the debtor filed the appeal bond with the clerk of the state court as required to lodge a suspensive appeal, the debtor no longer had a property interest in the bond.[30] "The principal risk against which such bonds are intended as a protection is insolvency."[31] "To hold that the very contingency against which [the bonds] guard shall, if it happens, discharge them, [is] bad law and worse logic."[32] Therefore, the transfer of a debtor's interest in property took place when the bond was furnished to the state court, not at the time the clerk paid the bond to Mitchell. In other words, the transfer of the interest occurred on October 19, 2006 and thus it fell outside any possible preference period. Furthermore, the "debtor retains a reversionary interest

---

[26] Ex. 12.

[27] Ex. 37.

[28] (P-23), Plaintiff's Post-Trial Memorandum, at 12-13.

[29] (P-6), Answer to Complaint, at 26.

[30] *Thermoview Indus. v. Clemmens*, 2008 WL 906221 (W.D. Ky. 2008); *In re Duplitronics,* 183 B.R. 1010, 1014 (Bankr. N.D. Ill. 1995); *In re Southmark Corp.,* 138 B.R. 820, 828 (Bankr. N.D. Tex. 1992).

[31] *In re Alwan Bros. Co.*, 112 B.R. 294, 296 (Bankr. C.D. Ill. 1990).

[32] *Id*.

in an appeal bond subject to divestiture if the debtor is unsuccessful once the appeal process has been completed."[33] Here, the debtor has been divested of its reversionary interest since that appeal was completed on September 14, 2007.[34] Because the debtor has no interest in an appeal bond after final judgment on an unsuccessful appeal, the bond is not property of the estate and thus there is no preferential transfer.[35]

For the foregoing reasons, the state court clerk's issuance of the $100,000 check to Mitchell was not avoidable as a preference under section 547(b).

### III. Mitchell's Counterclaims

Mitchell prays for judgment "recognizing and according full faith and credit" to the declaratory judgment and the monetary judgment. The court observes that both of these judgments were offered and admitted into evidence without objection, and there is no controversy with respect to the Court's recognition or accordance of full faith and credit to these judgments. Accordingly, there is no need for a declaratory judgment.[36]

Next, Mitchell prays for judgment "[r]ecognizing and declaring that [E.H. Mitchell & Company, L.L.C.] is the owner of the proceeds of mineral rights attributable to, derived from, and related to Mitchell's land, in the amount of THREE MILLION TWO HUNDRED THIRTEEN THOUSAND FIVE HUNDRED EIGHTY FIVE & NO/100 DOLLARS ($3,213,585.00), plus interest, attorney's fees, and costs under the *August 8, 1996* sand and gravel lease and the *June 23, 1998* addendum to and extension of the lease between E. H. Mitchell & Company, L.L.C. and Phoenix Associates Land Syndicate, Inc." Mitchell has

---

[33] *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 942 (Bankr. S.D.N.Y. 1994).

[34] *Id.*

[35] *In re Duplitronics,* 183 B.R. at 1014.

[36] 28 U.S.C. § 2201(a).

obtained its state court monetary judgment and application of *res judicata* precludes the court from retrying this issue.

Next, Mitchell prays for judgment "[r]ecognizing and declaring that the proceeds of mineral rights attributable to, derived from, and related to Mitchell's land, in the amount of THREE MILLION TWO HUNDRED THIRTEEN THOUSAND FIVE HUNDRED EIGHTY FIVE & NO/100DOLLARS ($3,213,585.00), plus interest, attorney's fees, and costs under the *August 8, 1996* sand and gravel lease and the *June 23, 1998* addendum to and extension of that lease between E. H. Mitchell & Company, L.L.C. and Phoenix Associates Land Syndicate, Inc. do not constitute 'property of the estate' of Phoenix." There is no controversy here because no party has ever contended that the property of the Phoenix bankruptcy estate includes "proceeds of mineral rights attributable to, derived from, and related to Mitchell's land." Again, there is no need for this judgment requested by Mitchell.

Mitchell also prays for judgment "[d]irecting the distribution of the proceeds of mineral rights attributable to, derived from, and related to Mitchell's land, in the amount of THREE MILLION TWO HUNDRED THIRTEEN THOUSAND FIVE HUNDRED EIGHTY FIVE & NO/100DOLLARS ($3,213,585.00), plus interest, attorney's fees, and costs directly to the account of Mitchell." Because "proceeds of mineral rights attributable to, derived from, and related to Mitchell's land" are included in the bankruptcy estate, the court can only make a *pro rata* distribution of those proceeds in the liquidation process rather than direct distribution of the total amount directly to Mitchell's account.

Mitchell also prays for judgment "[r]ecognizing and declaring that plaintiff, E.H. Mitchell & Company, L.L.C., is a secured creditor under the *August 8, 1996* sand and gravel lease and the *June 23, 1998* addendum to and extension of that lease between E. H. Mitchell &

9

Company, L.L.C. and Phoenix Associates Land Syndicate, Inc. (sic) with an 'allowed secured Claim' and right to priority payment from proceeds generated under the lease or awarded to Phoenix or its bankruptcy estate against the First National Bank of Picayune as damages for loss of the lease." With the avoidance of the judgment lien created by the April 3, 2009 recordation of Mitchell's monetary judgment, Mitchell is no longer a secured creditor of Phoenix. Further, the Court cannot discern any right to priority payment that Mitchell may have from proceeds awarded to the bankruptcy estate against the First National Bank of Picayune for damages for loss of the lease.

The court concludes that the all of counterclaims listed above should be dismissed.

Finally, Mitchell prays for judgment "[r]ecognizing and declaring that the $100,000.00 cash suspensive appeal bond deposited by Phoenix in the registry of the 22nd Judicial District Court in lieu of a surety bond constituted funds held in pledge as security for the real obligation owed by Phoenix to Mitchell and does not constitute a transfer avoidable as a preference under the Bankruptcy Code." As the court has already concluded that the appeal bond is not an avoidable transfer under section 547(b), the court grants this declaratory judgment.

## IV. Conclusion

For the foregoing reasons, the court holds that the judicial lien created by the recordation of the state court judgment on April 3, 2009, constituted a preferential transfer and that the preferential transfer is avoided pursuant to section 547(b) of the Bankruptcy Code. And the court holds that the $100,000.00 cash suspensive appeal bond deposited by Phoenix in the registry of the 22nd Judicial District Court on October 19, 2006 does not constitute a transfer avoidable as a preference under the Bankruptcy Code. Further, the court dismisses all the

counterclaims of Mitchell except the one that prays for a declaratory judgment that the cash appeal bond deposited in the state court does not constitute an avoidable transfer.

New Orleans, Louisiana, April 6, 2011.

                                                                    *J. A. Brown*
                                                                    Jerry A. Brown
                                                                    U.S. Bankruptcy Judge